# EXHIBIT "A"

# Settlement Agreement

# SETTLEMENT AGREEMENT, RELEASE OF CLAIMS AND COVENANT NOT TO SUE

This Settlement Agreement is made and entered into on this the 23rd day of May, 2012, by and between Michele Galloway, and all of her heirs, executors, administrators, successors and assigns on the one hand ("Employee") and Exploring.com, Inc. d/b/a Brumark ("Brumark") and each of its assigns, parent companies, subsidiary companies, commonly owned or controlled companies, officers, directors, shareholders, insurers, employees, and agents, David Walens, Donna Walens and Vivek Ruparel, and each of these individuals' heirs, executors, administrators, successors, insurers and attorneys (collectively referred to as "Parties of the Second Part") on the other hand. Employee and Parties of the Second Part may be sometimes referred to herein as "the Parties."

## WITNESSETH

WHEREAS, Employee was previously employed by Brumark; and

WHEREAS, Employee's employment with Brumark terminated on March 9, 2012; and

WHEREAS, Employee has filed suit in the United States District Court for the Northern District of Georgia, Civil Action No. 1:12-CV-1041-SCJ ("Litigation") claiming that the Parties of the Second Part owe her compensation under the Fair Labor Standards Act ("FLSA"), that the Parties of the Second Part retaliated against her in violation of the FLSA, and that the Parties of the Second Part intentionally inflicted emotional distress upon her in violation of Georgia law; and

WHEREAS, the Parties of the Second Part dispute and deny Employee's claims and, assert that Employee was not entitled to overtime compensation, that during her employment with Brumark employee was paid all monies to which she was entitled under the FLSA and all other applicable laws, and that neither the Parties of the Second Part collectively or any of them individually intentionally inflicted emotional distress upon her or otherwise violated any of her rights or breached any obligation they may have owed to her; and

WHEREAS, the Parties have engaged in extensive settlement negotiations and have reached the agreement set forth herein.

NOW THEREFORE, for and in consideration of the agreement set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties hereby covenant and agree as follows:

1. Settlement.

(a) Following execution of this Agreement, as specified below, Brumark and/or David Walens on behalf of the Parties of the Second Part collectively and each of them individually shall pay to or on behalf of Employee the gross total sum of twenty six thousand three hundred fifty dollars and no cents ($26,350.00) ("Settlement Payment") as full and final settlement of any and all matters and disputes between Employee and the Parties of the Second Part collectively and individually, up to the date of this Agreement. The Settlement Payment shall be paid by checks delivered to Employee's counsel, as follows:

(1) one certified check payable to employee in the gross amount of five thousand dollars and no cents ($5,000.00) less legally required withholdings based on the last form W-4 submitted by Employee to Brumark, to be reported by Brumark as W-2 income to Employee;

(2) one certified check payable to Employee in the amount of twelve thousand five hundred dollars and no cents ($12,500.00) $7,500 of which represents payment for Employee's claim of intentional infliction of emotional distress and $5,000 of which represents Employee's claim for liquidated damages, to be reported by Brumark as 1099-miscellaneous income to Employee; and

(3) one certified check payable to Moore Ingram, Johnson & Steele, LLP in the amount of eight thousand eight hundred fifty dollars and no cents ($8,850.00) as compensation for all costs and attorneys' fees Employee may have incurred in connection with the claims asserted or any other matter related to the Parties of the Second Part.

(b) The Settlement Payment shall be paid within five (5) days of the Effective Date of this Agreement as defined below.

(c) The Parties further acknowledge that no portion of the Settlement Payment is for punitive damages.

2. General Release and Waiver.

(a) FULL AND FINAL SETTLEMENT OF ALL CLAIMS. Employee clearly understands

and expressly represents that this Agreement is being executed and that the Settlement Payment and the other consideration provided for herein is being made as full and final compensation for any and all losses and any and all claims employee has or may have against the Parties of the Second Part collectively or any of them individually, arising from her employment with Brumark or otherwise, and that upon receipt of the Settlement Payment and the other consideration provided for herein Employee will have received everything she is entitled to from the Parties of the Second Part collectively and each of them individually for any reason whatsoever. The consideration provided for herein is full and final compensation for all injuries or other damages, including for overtime compensation, liquidated damages, interest, attorney fees, costs and compensatory and other damages Employee may have incurred or which are in any way attributed to her employment with Brumark or any other matter, including but not limited to:

(1) violations or alleged violations of any federal, state, or local statute, ordinance, or common law, including, but not limited to, the Constitution of the United States or of any State and the statutory or common laws of the United States or of any State, including, but not limited to: the Fair Labor Standards Act; Title VII of the Civil Rights Act of 1964; the Americans With Disabilities Act; the Age Discrimination in Employment Act; the Equal Pay Act; the Employee Retirement Income Security Act of 1974; the Family and Medical Leave Act of 1993; and all other claims that in any way relate to Employee's employment with Brumark or any other matter including or concerning the Parties of the Second Part collectively or any of them individually, including but not limited to claims for compensation, including wages, overtime compensation, liquidated damages, interest and/or penalties, benefits of any kind, or unused accrued vacation or sick pay, other actual or compensatory damages, and claims for attorneys' fees, expenses or costs arising out of the Litigation or otherwise.

(2) failure on the part of the Parties of the Second Part collectively or any of them individually as to any duty or obligation whatsoever based on any act occurring up to the date of this Agreement;

(b) In consideration of the Settlement Payment and the other obligations of this Agreement and except where it may be otherwise prohibited by law, Employee, as defined above, covenants not to sue, releases without any reservations whatsoever, and forever discharges the Parties of the Second Part collectively and each of them individually from all actual and potential claims, com-

plaints, demands, causes of action, damages, costs, expenses, fees, and other liabilities of every sort and description, direct or indirect, fixed or contingent, known or unknown, suspected or unsuspected, and whether or not liquidated, including, without limitation, claims based upon preexisting acts occurring at any time up to the date of this Agreement, except claims that may arise as to the enforcement of this Agreement, which may result in future damages or injury (collectively, the "Claims"), arising out of, caused by, or otherwise related in any way to any matter, including, but not limited to those indentified in Section 2(a)(1) and (2).

(c) The Parties agree that the Settlement Payment described in paragraph 1 above is given in full accord and satisfaction of any and all claims that Employee has or may have against the Parties of the Second Part collectively or any of them individually.

(d) It is the intention of the Parties that this Agreement be interpreted as broadly as possible such that the Parties of the Second Part collectively and each of them individually shall have no further obligations or liability of any sort or nature to Employee, directly or indirectly, other than as set forth herein.

(e) Employee agrees not only to release the Parties of the Second Part collectively and each of them individually from any and all claims as stated above which she has made or could make on her own behalf, but also any and all claims which may be made or could be made by any other person or organization on her behalf. Employee specifically waives any right to become, and promises not to become, a member of any class or other group in a case in which a claim against the Parties of the Second Part collectively or any of them individually is made involving any events occurring up to and including the date of this Agreement, except where such waiver is specifically prohibited by law.

(f) The Parties of the Second Part collectively and each of them individually make no representation and provide no guaranty or assurance regarding the tax consequences to Employee for payment of the Settlement Payment. Except for any withholding amounts to be paid by Brumark as specified in Section 1 above, Employee (or Employee's counsel with respect to the payment of costs and attorneys' fees) shall be responsible for any and all taxes that may be due as a result of the Settlement Payment. It is expressly understood and agreed by Galloway that should the Parties of the Second Part or any of them individually incur tax liability, charges or expenses whatsoever as a result of not making any such withholdings to the applicable local, state or federal tax agencies, Galloway will indemnify and reimburse the Parties of the Second

Part and each of them individually for such usual and reasonable costs associated with not making withholdings. Said reimbursement shall be made within thirty (30) days of Galloway's receipt of reasonable documentation that the Parties of the Second Part or any of them individually incurred liability, charges or expenses as a result of not making any withholdings to the applicable tax agency.

(g) The Parties agree that in addition to any other remedies which may be available to the Parties of the Second Part collectively and each of them individually in the event of a breach of this Section 2 by Employee, the Parties of the Second Part collectively and each of them individually shall be entitled to recover the full damages for said breach, plus reasonable attorney fees, costs, and expenses in attempting to enforce the terms of this Agreement.

(h) Employee expressly acknowledges that this release, waiver and covenant not to sue is made knowingly and voluntarily and with a full understanding of its terms.

3. Nondisclosure.

(a) Employee agrees that she has not and will not voluntarily disclose or publicize to any person or entity, except as expressly provided herein, the terms or conditions of this Agreement, or the basis for any claims, demands, or negotiations giving rise to this Agreement ("Confidential Information"). Notwithstanding anything else stated herein, Employee shall be permitted to disclose Confidential Information to her spouse, accountants, attorneys, financial advisors, the Internal Revenue Service, and any state or municipal taxing authority, provided, however, that if Employee does so, she shall advise all such persons of her obligations under this paragraph and the potential liability to the Parties of the Second Part collectively and each of them individually for the disclosure and/or publication of such Confidential Information and that they shall agree to be bound by the terms of this Nondisclosure provision. Further, notwithstanding anything else stated herein, it is agreed that Employee shall be permitted to disclose Confidential Information pursuant to a subpoena or other legal process; provided, however, that she complies with Section 3(c) below.

(b) It is expressly agreed by and between the Parties that if there are any inquiries about this Agreement or the potential claims, facts or circumstances underlying this Agreement, the Parties shall respond by stating in substance only that the matter was resolved to the satisfaction of the Parties.

(c) Employee agrees that if she receives a subpoena or other legal process seeking Confidential Information as defined in paragraph 3(a), she will immediately send written notification to the Parties of the Second Part by to each of them as follows:

(1) Brumark c/o David Walens at 3655 Atlanta Industrial Drive, Bldg. 100 Atlanta, Georgia 30331-1058.

(2) David Walens at 1702 Pennington Cr., Marietta, Georgia 30062 .

(3) Donna Walens at 1702 Pennington Cr., Marietta, Georgia30062.

(4) Vivek Ruparel at 4695 N. Church Lane, Apt. 13308 Smyrna, Georgia 30080.

Additionally, Employee shall send written notice to counsel for the Parties of the Second Part, Rhonda L. Klein, Wimberly, Lawson, Steckel, Schneider & Stine, P.C., 3400 Peachtree Street, N.E., Suite 400, Atlanta, Georgia 30326.

For purposes of any notices to the Employee, notice shall be given to Employee at 1120 Standard Drive, Atlanta, GA 30319 and to Employee's attorney at Moore Ingram Johnson & Steele, LLP, 326 Roswell Street, Marietta, GA 30060 and atg@mijs.com.

4. Liquidated Damages for Breach of Nondisclosure Obligations.

(a) The Parties hereto acknowledge that the Nondisclosure provision set forth in Sections 3 herein is an essential component of this Agreement. The Parties acknowledge and agree that any breach by Employee of her obligations under Section 3 of this Agreement will result in irreparable harm to The Parties of the Second Part, and that the damages resulting from such harm would be impossible to accurately determine in monetary terms. Therefore, upon the first such direct breach by Employee, including her spouse or attorneys, , The Parties of the Second Part , collectively will be entitled to recover the sum of two thousand five hundred dollars and no cents ($2,500.00); for the second such direct breach by Employee, including her spouse or attorneys, The Parties of the Second Part collectively will be entitled to recover the sum of one thousand five hundred dollars and no cents ($1,500.00); for the third and each subsequent direct breach by Employee, including her spouse or attorneys, the Parties of the Second Part collectively will be entitled to recover the sum of one thousand dollars and no cents ($1,000.00); provided that in no event shall the total amount of such liquidated damages for all violations combined exceed the sum of seven thousand dollars and no cents ($7,000.00). Finally,

the Parties of the Second Part and the Employee agree that any alleged breach of the respective duties as set forth in Section 3 herein must be proved by clear and convincing evidence in a court of law or a court of equity. The Parties agree that such amount would be reasonable and just compensation for each such breach and Employee promise to pay and Parties of the Second Part agree to accept such sum as liquidated damages and not as a penalty in the event of such breach.

(b) In the event of a breach of the Nondisclosure provision set forth in Section 3, in addition to the recovery of liquidated damages as set forth in Section 4(a) above, the Parties of the Second Part collectively or any of them individually reserve the right to seek injunctive relief to prevent further violations of such provision.

(c) In the event The Parties of the Second Part or any one of them individually prevail in an action against Employee for breach of the Nondisclosure Provision (such action to be proved with clear and convincing evidence), they shall be entitled to recover reasonable attorney's fees and costs from Employee. However, all Parties agree that prior to filing a suit for liquidated damages, The Parties of the Second Part, or any one of them individually, shall provide Employee fifteen (15) days written notice via certified mail or statutory overnight delivery to the addresses specified in Section 3 above that they have a good faith reason to believe she has breached her obligations under this Section 4(a). Such notice shall inform Employee of the basis for their good faith belief that Employee has breached her obligations which, at a minimum, shall include the substance of the alleged breach and the date on which said breach is alleged to have occurred. Upon receipt of said notice, the Parties agree to negotiate with one another in good faith in order to settle their differences concerning the alleged breach and the non-breaching party agrees not to file suit until fifteen (15) days after receipt of said notice; provided, however, that in the event The Parties of the Second Part or any one of the individually obtains in good faith evidence of a subsequent breach by Employee, The Parties of the Second Part or any one of them individually may immediately file suit to recover liquidated damages. Nothing in this Agreement shall prevent The Parties of the Second Part or any one of them individually from filing an action for injunctive relief prior to the expiration of said fifteen (15) day notice to the extent that such party would otherwise suffer irreparable harm.

(d) The Parties of the Second Part and each of them individually agree that they will not disclose the terms of this Settlement Agreement to any third party except those who, within their good faith judgment, have a legitimate reason to know such information, with the intent of having such third person "set-up" Employee. For purposes of this Section 4(d), "Set-Up" shall

mean that the Parties of the Second Part or any of the individually either: (1) falsely alleges with knowledge of said falsity that Employee breached her confidentiality obligations under Section 3 of this Agreement; or (2) induces a third party to cause Employee to breach her confidentiality obligations under Section 3 of this Agreement, for the purpose of allowing The Parties of the Second Part to bring a claim against Employee for breach of her obligations under Section 3. Further, should it be determined by clear and convincing evidence that The Parties of the Second Part or any one of them individually have engaged in such conduct, The Parties of the Second Part or any one of them who may have engaged in such prohibited action shall pay Employee's reasonable attorneys' fees incurred in defending a claim brought against Employee by any of the Parties of the Second Part, whether collectively or individually, for breach of Section 3.

(e) The Nondisclosure provisions of this Agreement and the remedies for breach of same as outlined in Section 3 and 4(d) of this Agreement shall expire on March 9, 2015.

5. Non-Disparagement.

(a) Employee agrees not to criticize, disparage, or otherwise demean in any way the Parties of the Second Part collectively or any of them individually, or service or product any of them may provide.

(b) Exploring.com, Inc. agrees that it will not, by and through its principals, officers, directors or agents criticize, disparage, or otherwise demean in any way Galloway.

(c) Dave Walens, Donna Walens and Vivarek Ruparel agree that they will not criticize, disparage, or otherwise demean in any way Galloway.

(d) Furthermore, within five days of the date of this Agreement David Walens and Vivek Ruparel agree to sign a letter that Galloway may use with prospective employers which reads exactly as follows:

Re: Michele R. Galloway f/k/a Michele R. Wallis

To whom it may concern:

This letter is written on behalf of Michele R. Galloway, a former employee of

Exploring.com d/b/a Brumark. Michele worked in customer service and as a project manager for us from December 7, 2009 through March 9, 2012. Michele is diligent, attentive, and takes pride in her work. She was loved by all of our customers with whom she interacted and provided excellent service and a professional, yet personal manner. She would be an asset to any employers.

Sincerely,

David Walens, CEO
Exploring.com d/b/a/ Brumark

Vivek Ruparel, CFO
Exploring.com d/b/a Brumark

(6) No Admission of Liability.

Neither the Parties of the Second Part collectively nor any of them individually concede or admit that, with respect to Employee, they have violated any law, statute, ordinance, or contract and/or failed as to any duty or obligation whatsoever, or engaged in any kind of wrongful conduct. Indeed, the Parties of the Second Part collectively and each of them individually specifically deny that they have engaged in any such conduct. The Parties of the Second Part enter into this Agreement solely in the interest of avoiding additional costs which would result from litigation, and Employee acknowledges that the consideration described in this Agreement is adequate and sufficient and represents a full and complete settlement of any and all claims and/or rights as more fully described herein.

(7) Future Employment.

(a) Employee agrees that she will not apply for or otherwise seek employment with Brumark, any of its affiliated entities or any entity in which any of the Parties of the Second Part have any ownership or managerial interest, and that neither Brumark, any of its affiliated entities, or any entity in which any of the Parties of the Second Part have any ownership or managerial interest have any obligation, contractual or otherwise, to hire her in the future.

(b) The Parties agree that except as provided for hereinafter, the Employment Agreement

between Employee and Explorer.com, Inc., dated December 7, 2009 remains in full force and effect, including the Confidentiality Provision contained therein, which provides as follows and which is reincorporated herein:

> **"Confidential Information"** means any Company [Explorer.com, Inc.] proprietary information, technical data, trade secrets or know-how, including , but not limited to, strategic plans, products, services, price lists, customer lists and customers (including, but not limited to, customers of the Company [Explorer.com, Inc.] on whom I [Employee] called or with whom I [Employee] became acquainted during the term of my [Employee's] employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, matters of a technical nature such as methods, formulae, compositions, processes, discoveries, research projects, equipment, machines, inventions, (whether patented or not), computer programs, design technology and know-how, manufacturing and/or design techniques, and similar items; matters of a business nature such as information about Company's [Explorer.com, Inc.] payroll, costing, purchasing, pricing, profits, sales, Company [Explorer.com, Inc.] sales materials, business and marketing strategies, profit margins, sales projections, customer preferences and requirements, contract renewal dates, records, memoranda, and Company [Explorer.com, Inc.] files; and matters pertaining to future developments, such as research and development, future marketing, product ideas, and merchandising or other business information disclosed to me [Employee] by the Company [Explorer.com, Inc.] either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I [Employee] further understand that Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act or omission of mine [Employee] or of others who were under confidentiality obligations as to the items involved or improvements or new versions thereof.
>
> I acknowledge that such Confidential Information is worthy of protection and is the sole property of the Company [Explorer.com, Inc.], and that covenants contained in this Agreement are a reasonable means to provide such protection. Employee agrees that for two (2) years following the termination of Employee's

employment, she shall not divulge or make use of any Confidential Information, directly or indirectly, personally or on behalf of any other person, business, corporation, or entity without prior written consent of the Company . [Explorer.com, Inc.].

This covenant is not intended to, and does not, limit in any way my [Employee's] duties and obligations under statutory or case law not to disclose or make use of confidential and/or trade secret information, which is some cases will protect the information for more than three years. I [Employee] understand that this Paragraph 4 does not limit in any way the Company's [Explorer.com, Inc.] right to pursue any trade secret violations under governing law and that such law usually provides for monetary damages and other relief.

Notwithstanding anything else stated herein, the Parties agree that Employee can inform prospective employers (other than those specifically enumerated in Section 7(c) below) that, with respect to Explorer.com, Inc. d/b/a Brumark, she is not under any restriction to seek employment pursuant to any non-compete or other restrictive covenant;, provided, however, that, she is subject to a confidentiality obligation.

(c) The Parties of the Second Part agree that they shall not enforce paragraph 7(a)(iii) of the Employment Agreement; provided, however, that Employee agrees that for a period of two years from the date of her termination, she will not seek or accept employment with the following companies, all of which provide flooring and related products and services to the trade show industry: The Inside Track, Event Solutions, Mainline, Flooring Exhibits, McNabb, ECS. Other than as is expressly stated herein, Employee is free to seek employment with and become employed by any other entity, including customers of Exploring.com and other flooring companies. The prohibition on working for the foregoing companies shall expire on March 9, 2014. Employee further agrees that she must keep the Company's agreement to modify Employee's obligations under their Employment Agreement absolutely confidential. The Parties acknowledge that Employee's agreement to maintain the confidentiality of this Section 7(b) and (c) are material terms.

(8) <u>General Provisions</u>.

(a) Employee represents, warrants, and agrees that she has not, and will not, assign, convey, or otherwise transfer any interest in any claims or other liabilities or obligations which are the subject of this Agreement.

(b) Employee represents, warrants and agrees that she will not institute, maintain, voluntarily assist in or otherwise encourage any suit, action, or other proceeding at law, in equity, or otherwise, against the Parties of the Second Part collectively or any of them individually, except where prohibited by law. However, subject to the terms of Section 3 of this Agreement, nothing herein shall prevent Employee from complying with any court subpoena or order provided that Employee, through her attorney, if any, gives each of the Parties of the Second Part individually notice of such subpoena or order immediately upon receipt as provided for above.

(c) Employee acknowledges and agrees that she has received all monies to which she may be entitled under the FLSA, including for minimum wage, overtime, liquidated damages, interest and attorneys' fees, that with the payment being made herein she is not entitled to any further payment under the FLSA and that she will not accept any further payment representing compensation for time worked under the FLSA. In the event that Employee should receive any payment representing compensation of any kind under the FLSA as a result of an action or other proceeding, she will immediately assign any and all such monies to Brumark.

(d) Employee acknowledges and agrees that during her employment with Brumark she was provided all leave to which she may have been entitled under the Family and Medical Leave Act.

(e) Employee represents, warrants, acknowledges and agrees that she did not incur any workplace injury while employed by Brumark.

(f) Employee represents and warrants that prior to entering into this Agreement she has not disclosed the facts or the terms of this Settlement Agreement or of the negotiations leading up to this Settlement Agreement with anyone other than her spouse and her attorneys. Employee further represents that she does not have any reason to believe that prior to execution of this Settlement Agreement neither her husband nor her attorneys disclosed the acts or the terms of this Settlement Agreement or of the negotiations leading up to this Settlement Agreement to any third party.

**CONFIDENTIAL**

(g) The Parties of the Second Part agree not to contest the unemployment claim of Employee and agree not to voluntarily participate in or testify in any unemployment hearing or appeal from April 24, 2012 forward. Notwithstanding anything else stated herein, in the event that any of The Parties of the Second Part receive a subpoena or other legal process from the Department of Labor, another government body or a court, ordering them to appear and testify, they may do so provided that they will immediately send written notification of the subpoena or other process to Employee at the address provided for above.

(h) The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed to constitute an executed original, even though not all signatures may appear on the same counterpart.

(i) Employee acknowledges that she has read and fully understands the terms of this Agreement, with adequate opportunity and time for such review; that this Agreement has been the result of substantive negotiations in which Employee was represented by counsel of her choosing; and that she is fully aware of its contents and of its legal effect. Accordingly, this Agreement shall not be construed against any party on the grounds that such party drafted this Agreement. Instead, this Agreement shall be interpreted as though drafted equally by all parties. Employee enters into this Agreement freely and voluntarily and with a full understanding of its terms. Employee acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made to her by the Parties of the Second Part collectively or by any of them individually to induce execution of this document. Employee further states that the only representations made to her in order to obtain her consent to this Agreement are stated herein and that she is signing this Agreement voluntarily and without coercion, intimidation or threat of retaliation.

(j) This Agreement embodies the entire understanding of the Parties and all of the terms and conditions with respect to the matters discussed herein; it supersedes and annuls any and all other or former agreements, contracts, promises or representations, whether written or oral, expressed or implied, made by, for, or on behalf of the Parties of the Second Part collectively and each of them individually, and it may not be altered, superseded, or otherwise modified except in writing signed by the party to be charged. All executed copies of this Agreement are duplicate originals, equally admissible as evidence.

(k) Failure by any party to enforce any of the remedies provided to it in this Agreement shall not be deemed a waiver of those rights.

(l) The party representative executing this Agreement on behalf of Brumark warrants that he is the duly authorized representative of Brumark, and is fully empowered to execute this Agreement on behalf of the company.

(m) This Agreement shall be construed in accordance with the laws of the State of Georgia. If any provision of this Agreement is for any reason held to be invalid or unenforceable, such provision shall not affect any other provision hereof, but this Agreement shall be construed as if such invalid and/or unenforceable provision had never been contained herein.

(n) Any action to enforce this Agreement must be brought in the State or Superior Court of Fulton County, Georgia or the United States District Court for the Northern District of Georgia as appropriate and all of the Parties consent to the jurisdiction and venue of those courts.

(o) Should any part of this Agreement be rendered or declared invalid by a court of competent jurisdiction, such invalidation of such part or portion of this Agreement should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

(p) Except as may be expressly stated otherwise, all notices, correspondence and other matters to be sent should be sent to the parties as follows: (1) to Employee c/o Employee's counsel, Alec Galloway, Moore Ingram Johnson & Steele, LLP, Marietta, GA 3))); and (2) to the Parties of the Second Part at the addresses set forth in Section 3 above, with a copy to counsel for Parties of the Second Part as follows: Rhonda L. Klein, Esq., of Wimberly, Lawson, Steckel, Schneider & Stine, P.C., 3400 Peachtree Road, N.E., Suite 400, Atlanta, Georgia 30326.

(q) Date. The Effective Date of this Agreement will be the day the Court enters and Order approving this Agreement in the Litigation.

**This Is A Release**
**Read Before Signing**

CONFIDENTIAL

**MICHELE RENEE GALLOWAY**

______________________

Date: 5/23/12

**EXPLORER.COM, INC., D/B/A BRUMARK**

By: David Walens

Its: President

______________________

Date: 5/24/12

By: David Walens, Individually

______________________

Date: 5/24/12

By: Donna Walens, Individually

______________________

Date: 5/24/12

By: Vivek Ruparel, Individually

______________________

Date: 05/25/2012



Initials